UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                   Plaintiff,               :  **MEMORANDUM**
                                                            :  **DECISION AND ORDER**
                - against -                                 :
                                                            :  13 Cr. 0424 (BMC)
MUZAFFAR NADEEM, a/k/a "Nadeem                              :
Muzaffar", a/k/a "Ali", AFZAAL CHAUDRY,                     :
a/k/a "Tariq", ZAINUL SYED, a/k/a "Syed                     :
Zainul," a/k/a "Zaine", and IRFAN                           :
MUZAFFAR,                                                   :
                                                            :
                                   Defendants.              :
----------------------------------------------------------- X

**COGAN**, District Judge.

This case came before me on each of the defendants' motions to sever and for separate trials. The Court denied all of the motions on the record. This decision explains the basis for those rulings.

## BACKGROUND

The following facts are taken from the indictment in this case. The indictment alleges that defendant Muzaffar Nadeem ("Nadeem") was the CEO of SM&B Construction, Inc., a prime general contractor who took on New York City School Construction Authority ("SCA") contracts. Defendant Afzaal Chaudry ("Chaudry") was a foreman at SM&B,[1] and defendant Zainul Syed ("Syed") was an office manager. These defendants allegedly controlled at least one subcontractor (the "Subcontractor") which SM&B used to work on SCA projects. The Subcontractor was nominally owned by a cooperating witness ("CW"), but the indictment

---

[1] As noted *infra*, Chaudry contests the allegation that he was employed by SM&B, and maintains he was employed by a subcontractor.

alleges that this company was essentially a shell: defendants made all significant business decisions for the subcontractor, and defendant Nadeem gave the CW $10,000 to purchase the Subcontractor, which was never paid back.

New York State Labor Law § 220 *et seq*. provides that each contract for public works to which the SCA was a party must contain a provision requiring that workers be paid a prevailing wage rate. Section 220 also required general contractors to certify that they had complied with the prevailing wage requirements prior to receiving payment.

The indictment alleges that SM&B and its subcontractors did not pay its workers the prevailing wage. The defendants allegedly caused the Subcontractor[2] to submit fraudulent payroll forms which falsely stated that they included all workers on SCA projects; in reality, workers were omitted because they were paid in cash at less than the prevailing rate. In order to obtain the cash necessary to pay these workers, but avoid having a Currency Transaction Report filed by their bank, defendants Nadeem and Syed allegedly sent the CW, defendant Irfan Muzaffar ("Irfan") – one of Nadeem's sons – and others to cash multiple checks in amounts of less than $10,000.

The indictment further alleges that the CW, at the direction defendant Nadeem, made cash bribes to an undercover SCA inspector totaling over $30,000, in order to prevent the inspector from reporting that the Subcontractor was failing to employ unionized workers at an SCA project in the Bronx, or to pay those workers the prevailing wage. A bribe was also allegedly paid in order to cause the SCA inspector to lift a restriction on scaffolding permits at a project in Brooklyn.

---

[2] The indictment alleges that, although the CW's signature appears on these forms, defendant Syed signed them electronically on the CW's behalf, and that the CW had "did not actually have anything to do with the creation or submission" of these fraudulent forms.

The indictment alleges that the CW paid further bribes to a Shop Steward of the bricklayer's union, at the direction of defendants Nadeem and Syed. These bribes were intended to keep the Shop Steward from informing the Bricklayer's Union Local 1 that the Subcontractor was employing non-union bricklayers at two projects in Brooklyn and the Bronx. The bribes consisted of $50 cash per day per non-union bricklayer, and totaled $7,800 for the site of the Brooklyn project.

Finally, the indictment alleges that the SCA mailed checks worth nearly $36 million to SM&B between April 2007 and July 2011. During this time, Nadeem allegedly signed dozens of checks worth over $6 million to three shell corporations, owned by his son, his nephew, and defendant Syed. $2.3 million of this money was eventually sent to Pakistan for the purpose of investing in an amusement park there. Other monies were sent to personal bank accounts, including those of Nadeem and his close relatives.

## DISCUSSION

### I. Governing Law

Federal Rule of Criminal Procedure 8(b) states that an "indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 539, 113 S. Ct. 933 (1993). "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant."

3

Id.

"[A] defendant seeking severance under Rule 14 bears an extremely difficult burden of proving . . . that the prejudice would be so great as to deprive him of his right to a fair trial." U.S. v. Barret, 824 F. Supp. 2d 419, 433 (E.D.N.Y. 2011) (quotation omitted). Whether to grant a motion to sever is committed to the sound discretion of the trial court. Some factors to be considered include:

> (i) the number of defendants and counts; (ii) the complexity of the indictment; (iii) the estimated length of trial; (iv) disparities in the amount or type of proof offered against the defendants; (v) disparities in the degrees of involvement by defendants in the overall scheme; (vi) possible conflict between defense theories or strategies; (vii) potential prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant; and (viii) potential prejudice if exculpatory evidence were unavailable in a joint trial, but would have been available to a defendant tried alone.

U.S. v. Guillen-Rivas, 950 F. Supp. 2d 446, 457 (E.D.N.Y. 2013).[3]

## II. Irfan Muzaffar

Irfan has only been charged in two Counts of the Indictment, both related to structuring financial transactions to avoid reporting requirements in violation of, *inter alia*, 31 U.S.C. § 5324(a)(3). Namely, Irfan is alleged to have participated in cashing checks in amounts under $10,000, in order to pay workers cash at less than the prevailing rate. Irfan is thus a relatively minor player in this case compared to his co-defendants. However, "differing levels of culpability and proof are inevitable in any multi-defendant trial and standing alone, are insufficient grounds for separate trials." United States v. Santiago, 174 F. Supp. 2d 16, 22-23 (S.D.N.Y. 2001).

---

[3] Some of the defendants' severance motions rely, in part, on the argument that admission of a post-arrest statement made by Syed would violate their rights under Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620 (1968). In opposing the motions to sever, the Government had proposed redactions to Syed's statement to make it Bruton-compliant. At the hearing, I directed further redactions, and upon resubmission of the revised statement, I will determine whether to allow it or exclude it. Either way, the statement does not alter my analysis of the severance issue.

4

Irfan argues that all evidence relating to the crimes with which his father and co-defendants are charged would be inadmissible if Irfan received his own trial. He argues that the amount of inadmissible evidence will be so great that limiting instructions will be insufficient to cure any spillover prejudice. The Government argues that all of the evidence concerning his codefendants' bribery and misrepresentations would be admissible against Irfan to complete the story of the crimes he is charged with, as well as to show his motive for structuring the transactions as he did. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) ("[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.").

The Government's argument goes too far – I wouldn't allow Irfan's trial to be dominated by evidence primarily relating to others – but its basic premise is correct. I would admit a substantial amount of evidence relating to the broader conspiracy so that the Government could tell a full story and show Irfan's motive. This weakens Irfan's claim of prejudice from failure to sever. See United States v. Stewart, 590 F.3d 93, 123-24 (2d Cir. 2009) ("[T]he fact that testimony against a codefendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately.").

Further, "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." United States v. Carson, 702 F.2d 351, 367 (2d Cir. 1983). Rather, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539, 113 S. Ct. 933.

This is not a case like United States v. DiNome, 954 F.2d 839 (2d Cir. 1992), where "the

5

Second Circuit found reversible error in the trial court's denial of severance as to certain defendants because 'an infinitesimal fraction' of evidence offered during a sixteen-month trial related to those certain defendants, who were therefore 'swamped' by a 'mass of irrelevant evidence.'" Barret, 824 F. Supp. 2d at 434 (quoting DiNome). Here, there are only four defendants, trial will last at most four weeks, and any prejudice from the introduction of evidence irrelevant to Irfan can be cured through limiting instructions.

Finally, the risk of prejudice is significantly greater where the potentially irrelevant evidence is of an inflammatory nature. See United States v. Cardascia, 951 F.2d 474, 483 (2d Cir. 1991) ("Relief by severance may be more appropriate when the unrelated evidence reflects activities of a violent nature because the risk of substantial prejudice is greater."). There is no indication that this concern applies at all in this case.

### III. Afzaal Chaudry

First, although not entirely clear, Chaudry appears to argue that he is misjoined under Rule 8, because he is not charged in Counts 4 through 11 of the Indictment. The plain language of Rule 8 is to the contrary:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. **All defendants need not be charged in each count.**

Fed. R. Crim. P. 8(b) (emphasis added). The Indictment includes charges that Chaudry conspired with defendants Nadeem and Syed, and therefore joinder is proper.

Chaudry also advances arguments similar to Irfan, namely that the evidence against him is *de minimis* compared to the evidence against his co-defendants. This argument is largely speculative on his part, as he doesn't know what the evidence against him will be. Otherwise, the same reasons that Irfan's motion has been denied apply to

6

Chaudry. Differences in the level of culpability between codefendants are common, and any spillover prejudice from irrelevant evidence can be cured through limiting instructions.

Chaudry advances a few unique arguments in favor of severance, but they are without merit. First, he argues that he will be deprived of the exculpatory testimony of his co-defendants if they are all tried together. Chaudry's theory of how his co-defendants' testimony will exonerate him is, again, not entirely clear. He argues that he was employed as a foreman by RZ Construction, a subcontractor, and not SM & B, the prime contractor run by Nadeem at issue in this case. Chaudry appears to be saying that because he was supervised by the principal of RZ Construction, the Government cannot prove that he entered into any agreement with Nadeem and Syed and therefore cannot prove a necessary element of conspiracy. Presumably, then, Chaudry is saying that Nadeem and Syed would testify that they entered into no agreement with Chaudry, thus exonerating him.

The Second Circuit has directed district courts to consider four factors in determining whether the potential exculpatory testimony of a co-defendant warrants severance:

> (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege ...; (2) the degree to which exculpatory testimony would be cumulative ...; (3) the counter arguments of judicial economy ...; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment....

U.S. v. Sliker, 751 F.2d 477, 496 (2d Cir. 1984). Chaudry makes absolutely no showing on the first prong, and thus his argument fails. Chaudry has not submitted any proffer or affidavit from Nadeem or Syed indicating that they would waive their privilege and testify at his severed trial. Chaudry has similarly made no showing on the remaining

7

three prongs, because he simply does not describe the supposedly exculpatory testimony in any detail.  He just states, in a conclusory fashion, that the testimony would be exculpatory.  That is insufficient.

Second, Chaudry argues that a joint trial will burden his Fifth Amendment right not to testify.  He argues that if his co-defendants testify, he will be forced to testify himself lest the jury draw an adverse inference against him from his silence.  This argument is both speculative and meritless.  It is speculative because no codefendant has indicated an intent to testify, much less committed to doing so.  It is meritless because this Court routinely instructs all juries that they may not even mention in their deliberations a defendant's failure to testify, let alone consider it.  See United States v. Walka, 791 F. Supp. 96, 98 (D. Vt. 1992) (rejecting this argument for severance because court would instruct jury that no adverse inference could be drawn from any defendant's decision not to testify).

### IV.  Zainul Syed

Syed's arguments for severance are much the same as Irfan's – there will be evidence admitted relating to the two Counts for which he is not charged, and therefore he will suffer spillover prejudice.  His argument is considerably weaker than Irfan's, though, given that the two money laundering counts are the only ones in the Indictment with which he is not charged.  It is therefore rejected for the same reasons as was Irfan's above.

Syed also claims in passing that the Government will seek to admit evidence of criminal activity that predates Syed's employment at SM&B.  The Government has disclaimed any intent to do so, noting that Syed began his employment at SM&B in 2001

and the indictment charges criminal conduct beginning in 2007.

### V. Muzaffar Nadeem

Nadeem, the principal defendant in this action, raises only one unique argument in support of severance: that he and defendant Syed have mutually antagonistic defenses. Specifically, Nadeem argues that based on Syed's statements to the agents and in his motion, Nadeem believes that Syed's defense will be to essentially pin all of the wrongdoing on Nadeem. Nadeem states that "an integral part of Mr. Syed's defense" will involve the accusation that Nadeem was engaged in criminal conduct of which Syed was unaware, and that Syed will seek to cross examine Nadeem regarding those matters.

The Government correctly points out that the factual basis for this argument is quite speculative: Syed has not committed to any particular defense, nor has Nadeem himself committed to testifying such that his cross-examination would become an issue. "[I]n order to make a showing of 'mutually antagonistic' or 'irreconcilable defenses,' the defendant must make a factual demonstration that 'acceptance of one party's defense would tend to preclude the acquittal of [the] other.'" United States v. Salameh, 152 F.3d 88, 116 (2d Cir. 1998) (quoting United States v. Smith, 788 F.2d 663, 668 (10th Cir. 1986)). Further, "[m]ere 'fingerpointing'" among co-defendants "does not require severance." United States v. Casamento, 887 F.2d 1141, 1154 (2d Cir. 1989). Indeed, two defendants in Zafiro itself claimed that they were deprived of a fair trial due to their mutually antagonistic defenses – each claimed to be an innocent dupe of the other – but the Supreme Court held that severance was not required. Zafiro, 506 U.S. at 538-39. Rather, the Court held that less drastic measures such as limiting instructions sufficed.

Granting severance due to mutually antagonistic defenses is relatively rare, and

9

this is not that rare case.  Severance could be appropriate where, for example, a codefendant makes clear he will call a neutral third-party witness that will both contradict the Government's version of events and implicate the defendant seeking severance, effectively acting as a second prosecutor.  See United States v. Copeland, 336 F. Supp. 2d 223, 224-25 (E.D.N.Y. 2004) (severing trial of movant Copeland and codefendant Rivers from that of third codefendant Vasquez, where Vasquez intended to call eyewitnesses who identified only the first two defendants but not Vasquez as the bank robbers).  But this case presents only the more run-of-the-mill situation where codefendants accuse one another of being the guilty parties.  See Cardascia, 951 F.2d at 484-85 ("[A]n adversarial stance by a codefendant clearly does not, alone, require trials to be severed.  Were this true, a virtual ban on multidefendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses.").

     A limiting instruction, if timely requested by Nadeem, should be sufficient to cure any prejudice he might have from his codefendants' arguments.

                                            _____
                                                        U.S.D.J.

Dated: Brooklyn, New York
       July 18, 2014